# IN THE UNITED STATES DISTRICT COURT FOR
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

BURTON W. WIAND, as Receiver for
HOWARD WAXENBERG TRADING L.L.C.,
HKW TRADING LLC, HKW TRADING
FUND I LLC., DOWNING & ASSOCIATES
TECHNICAL ANALYSIS, and the ESTATE
OF HOWARD WAXENBERG,

    Plaintiff,                              CASE NO.

v.

SEYMOUR TERRY,

    Defendant.
_____/

## COMPLAINT

Burton W. Wiand (the "Receiver"), as duly appointed Receiver for Howard Waxenberg Trading, L.L.C.; HKW Trading LLC; HKW Trading Fund I LLC; Downing & Associates Technical Analysis; and the Estate of Howard Waxenberg (collectively referred to as the "Receivership Entities"), by and through his undersigned counsel hereby sues Defendant, SEYMOUR TERRY, and alleges as follows:

## GENERAL ALLEGATIONS

1. The United States District Court for the Middle District of Florida appointed Burton W. Wiand as the Receiver for the Receivership Entities by Orders dated June 9, 2005 and September 13, 2005, and reappointed him as Receiver for the Receivership Entities by Order dated February 22, 2006. The Court entered these Orders in an enforcement action brought by the Securities and Exchange Commission (the "Commission") styled: *Securities and Exchange Commission v. HKW Trading, LLC, Howard Waxenberg Trading, L.L.C., and Downing &*

*Associates Technical Analysis, n/k/a the Estate of Howard Waxenberg,* Case No. 8:05-CV-1076-T-24 MSS ("Commission Proceeding"). The Receiver was appointed by the Court pursuant to the Court's inherent equity powers to carry out the purposes of the Commission's action brought pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78(a), *et seq.*

2. A copy of the *SEC v. HKW Trading, LLC, et al*. complaint and a copy of the Order Reappointing the Receiver, were filed in the United States District Court for the Southern District of New York within ten (10) days of the order reappointing the Receiver in accordance with 28 U.S.C. § 754.

3. Under the terms of the Receivership Orders, in order to carry out the Commission's mandates and the purposes of the Commission's action brought under the Securities Exchange Act of 1934, the Securities Act of 1933 and the Investment Advisory Act of 1940, the Receiver was directed to investigate the affairs of the Receivership Entities, to marshal and safeguard their assets, and to institute legal proceedings for the benefit and on behalf of the Receivership Entities and their investors and other creditors against individuals or entities which the Receiver claims have wrongfully or improperly received funds or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including but not limited to actions seeking constructive trusts; disgorgement of profits; recovery and avoidance of fraudulent transfers under Florida Statute § 726.101, *et seq.* or otherwise; rescission; restitution; and the collection of debts.

4. On information and belief the Defendant is a resident of New York County, New York.

5. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 78aa, 28 U.S.C. § 754 and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.

This complaint is brought to accomplish the objectives of the Receivership Orders and is thus ancillary to the Court's exclusive jurisdiction over the receivership estate.

6. Further, this Court also has jurisdiction over this matter under 28 U.S.C. § 1332 because this action is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendant pursuant to 28 U.S.C. § 1692 and 28 U.S.C. § 754.

8. Venue in the United States District Court for the Middle District of Florida, Tampa Division, is proper under 28 U.S.C. §§ 1391 and 754, as this action is related to the Commission Proceeding pending in this district, and the Receiver was appointed in this district.

## PARTIES

9. Burton W. Wiand is the duly appointed and acting Receiver for the Receivership Entities.

10. On information and belief the Defendant was an investor in the Receivership Entities.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.   BACKGROUND**

11. Upon information and belief beginning in at least the year 1990 through May 2005, Howard K. Waxenberg ("Waxenberg") collected over $130 million by offering and selling securities to approximately 200 investors as part of a classic "Ponzi" scheme.[1]

---

[1] The term 'Ponzi scheme' is derived from Charles Ponzi, a famous Boston swindler. With a capital of $150, Ponzi began to borrow money on his own promissory notes at a 50% rate of interest payable in 90 days. Ponzi collected nearly $10 million in 8 months beginning in 1919, using the funds of new investors to pay off those whose notes had come due." U.S. v. Silvestri, 409 F.3d 1311, 1317 n.6 (11th Cir. 2005). Black's Law Dictionary now defines a Ponzi scheme as "[a] fraudulent investment scheme in which money contributed by later investors

12. Waxenberg pooled investors' principal investment funds in common accounts held in the name of the Receivership Entities. The Receivership Entities derived their assets from those investors' funds. The Receivership Entities had little, if any, income.

13. Waxenberg charged the investors a management fee, calculated based on the amount of assets under management and a percentage of the profits claimed to have been generated. Waxenberg represented to the investors, both orally and in writing, that their money was primarily invested in options and futures. To the contrary, at least since early 2001, Waxenberg held the majority of investor funds in low-yield investments, such as Treasury Bills and money-market accounts. During this period, despite Waxenberg's assurances that the investments were returning approximately 20% annually, the investments did not yield any where near that amount. In fact, he experienced losses on many of the investments he made.

14. Waxenberg regularly communicated to investors, through quarterly account statements and invoices, that their investments performed positively and generated no losses. These statements and invoices falsely indicated that investors were being paid purported "interest" based on the returns generated.

15. The investors relied upon those false and overstated returns leading them to make additional investments with Waxenberg in the Receivership Entities and refer friends and family to do the same.

16. Distributions made to the investors, including purported "net earnings" and/or "interest" reflected in the statements and relied upon by the investors, were paid almost exclusively from capital contributions from new investors or from other existing investors' principal funds rather than actual earnings.

---

generates artificially high dividends for the original investors, whose example attracted even larger investments." Black's Law Dictionary 1180 (7th ed. 1999).

4

17.     At all relevant times, Waxenberg and the Receivership Entities were insolvent in that they did not have sufficient assets to meet their obligations.

18.     Waxenberg diverted and/or misappropriated monies for his own use which were fraudulently procured from investors under the guise of "investing."

19.     Waxenberg committed suicide on May 15, 2005.

**B.     TRANSFER OR DISBURSEMENT OF MONEY TO DEFENDANTS**

20.     During the few months preceding his death, Waxenberg made purported "returns of principal" to approximately 63 investor accounts. The other approximately 125 investor accounts held at that time did not receive their purported principal investment. There does not appear to be any equitable reason for these distributions. It appears that all of these investors were similarly situated. These payments plainly benefited the recipients to the detriment of the other investors who did not receive such distributions.

21.     The Defendant received such an inequitable distribution from Waxenberg and the Receivership Entities in the few months immediately preceding Waxenberg's demise. Specifically, on or about May 11, 2005, the Defendant received $900,000.00 by check from HKW Trading Fund 1 LLC in connection with his investment. To allow the Defendant to keep this entire distribution would be inequitable and unjust to the investors of the Receivership Entities as a whole. As such, the Receiver seeks the return of $900,000.00.

22.     The monies Waxenberg and the Receivership Entities transferred or distributed to the Defendant were acquired, divested, and/or misappropriated by Waxenberg as a result of his operation of the Receivership Entities in the above-described Ponzi scheme. Thus, the funds paid to the Defendant were diverted assets of the Receivership Entities and the other investors.

23.     Receiver brings this action against the Defendant on behalf of the Receivership Entities and their investors to recover the distribution made to the Defendant so the Receiver

may equitably redistribute the funds collected by the Receivership in an appropriate manner.

## COUNT I

### (Florida Statutes § 726: Uniform Fraudulent Transfer Act)

24. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 23.

25. The transfers of funds to the Defendant from Waxenberg and the Receivership Entities were inherently fraudulent because Waxenberg made the transfers as part of a Ponzi scheme. Waxenberg's actual intent was to hinder, delay, or defraud the creditors and/or investors of the Receivership Entities.

26. None of the Receivership Entities received a reasonably equivalent value from the Defendant, or anyone acting on behalf of the Defendant, in exchange for the transfer. Nor did the Receivership Entities directly or indirectly benefit from the transfer. The transfer of monies to the Defendant from Waxenberg and the Receivership Entities was made without valid consideration.

27. At all material times, neither Waxenberg nor the Receivership Entities had sufficient assets to meet their obligations.

28. Throughout the course of the Ponzi scheme's operation and specifically in connection with the transfer at issue here, Waxenberg and the Receivership Entities intended to incur and did incur debts beyond the Receivership Entities' ability to pay as they became due as a result of the transfer.

29. The Receiver is entitled to avoid and recover the transfer of monies from Waxenberg and the Receivership Entities to the Defendant as an actual or constructively fraudulent conveyance.

WHEREFORE, the Receiver asks this Court to enter judgment against the

Defendant avoiding the transfers of monies from Waxenberg and the Receivership Entities to the Defendant, directing the Defendant to pay the Receiver the total amount of these transfers and for such other and further relief as the Court may deem just and proper.

### COUNT II

### (Unjust Enrichment)

30. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 23.

31. This unjust enrichment claim is asserted in the alternative as the statutory remedy provided in Section 726, *Florida Statutes* (2006), does not provide an adequate remedy at law.

32. The Defendant received significant distributions from Waxenberg and the Receivership Entities but did not provide consideration to the Receivership Entities in exchange for those monies.

33. The Defendant knowingly and voluntarily accepted and retained a benefit of the funds of the Receivership Entities transferred to the Defendant.

34. The circumstances render the Defendant's retention of those benefits inequitable unless the Defendant pays the Receiver the value of the benefits received.

35. The Defendant has been unjustly enriched at the expense of the Receivership Entities and their investors, and the Receivership Entities, via the Receiver, are entitled to judgment in the amount of the transfer.

WHEREFORE, the Receiver asks this Court to enter judgment against the Defendant for the total amount of the transfer made to the Defendant from Waxenberg and/or the Receivership Entities and for such other and further relief as the Court may deem just and proper.

## COUNT III

### (Disgorgement of Unlawful Profits)

36. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 23.

37. This disgorgement claim is asserted in the alternative as the statutory remedy provided in Section 726, *Florida Statutes* (2006), does not provide an adequate remedy at law.

38. The Defendant received distributions from Waxenberg and the Receivership Entities.

39. The Defendant did not provide consideration for the monies transferred to the Defendant by Waxenberg and the Receivership Entities.

40. On information and belief, the monies transferred to the Defendant belonged to the Receivership Entities and the investors in the Receivership Entities and continue to be wrongfully retained by the Defendant. As such, the Receivership Entities, through the Receiver, are entitled to disgorgement of those monies from the Defendant.

WHEREFORE, the Receiver asks this Court to enter judgment against the Defendant for the total amount of transfers made to the Defendant from Waxenberg and/or the Receivership

Entities and for such other and further relief as the Court may deem just and proper.

    Respectfully submitted,

    s/ Carl R. Nelson
    Carl R. Nelson (Trial Counsel)
    Florida Bar No: 0280186
    Maya M. Lockwood
    Florida Bar No. 0175481
    FOWLER WHITE BOGGS BANKER P.A.
    501 E. Kennedy Blvd., Suite 1700
    Tampa, FL  33602
    813-228-7411
    Fax No: 813-229-8313
    Attorneys for the Receiver Burton W. Wiand

#2440993v1